This is a bill to reform a contract entered into between the parties, whereby complainant was allowed ten feet along the southerly side of defendant's property for the construction of a siding. Complainant contends that his object in purchasing the premises for a large sum of money was to get larger quarters and where he could secure a proper siding. He moved in in 1925, and made no application for the siding until 1927, stating then his reason to be: "We do not wish to lose our rights to this agreement and we therefore ask you to submit to us plans for approval." The siding itself, therefore, does not appear to have been absolutely essential to the operation of his business.
Conferences were held and an agreement was drawn up and signed whereby the width of the siding was agreed upon at ten feet. It afterwards transpired that fifteen feet would make a better siding. Perhaps that amount would be absolutely necessary. Complainant seeks to compel the defendants to add five feet more to the property agreed to be conveyed *Page 2 
in the contract. The complainant charges that defendant was familiar with the construction of sidings and that when he executed the agreement he said ten feet would be sufficient, and that he knew complainant would rely on these false representations. The testimony does not bear him out in this. There is no proof that defendant Bick was familiar with the required width, and the truth seems to be that eight feet was at first suggested and finally Mr. Bick agreed on ten feet but no more. It cannot be said that representations were made by the defendant. Complainant, according to his own case, was very anxious to have a proper siding. If he did not know what width such a siding would require, it was his duty to make investigations and to familiarize himself with the situation so that he could secure himself by asking for the correct amount of land. He was satisfied, himself, with ten feet, and I do not see how he can now claim five feet more. Mistakes which might have been avoided by common and ordinary care, and which result from negligence, will not be reformed in equity. Mullen v. Cronan,90 N.J. Eq. 392. Paragraph 7 of the syllabus in the case ofGraham v. Berryman, 19 N.J. Eq. 29, is in point; it holds:
"Such mistake must be as to a fact, not only not known to the party, but one which he could not, by reasonable diligence, have ascertained. And where a party ought, in the exercise of ordinary prudence, to have made inquiry, and neglects to ascertain facts upon which his contract is based, in cases where it is not necessary to repose confidence in the other party, or where it is as much his duty as that of the party with whom he deals to know the facts, courts of equity will not relieve against his own negligence."
In the case of Durant v. Bacot, 13 N.J. Eq. 201, affirmed
in 15 N.J. Eq. 411, the court of errors and appeals held as follows:
"It may be true that all parties at the time were under the impression that the quantity thus added would make the westerly line at right angles with the road, or nearly so; but no pains were taken to see whether it were so or not, and there is not a particle of evidence to show that Van *Page 3 
Vorst had the slightest intention of selling or conveying any more land than he did then convey, or that he would have sold a foot more of land than he did sell, unless he had been paid an additional compensation therefor. Durant got the whole length that he asked for and all that he bargained for, and he paid for nothing that he did not get. On what principle it is, then, that he now claims that which he never asked for, that which he never bargained for, and that which he never paid for, it is difficult to perceive.
"I cannot see, from the evidence, that any deception was practiced or mistake made. If Durant did not think proper to have a measurement made of what he desired, but saw fit to make a guess on the subject, and it turned out that the purchase did not answer his purpose quite as well as he expected it would, it was an error of his own alone, but it furnished no reason, then or now, nor at any after time, for compelling Mr. Van Vorst or his descendants to convey to him other lands never asked for, or purchased or paid for, and without any additional compensation, so that his original design, if he had one, of having his westerly line at right angles with the road, might be carried out."
In this case, involving the same principles, the testimony as a whole is far from convincing me that any deception was practiced on the complainant. On the other hand, it seems quite certain that he had ample opportunity, during the two years he held the property, to ascertain the required width of a siding, and if he agreed to a width of ten feet he cannot now come into equity and plead his own carelessness in order to get five feet more. Evidence submitted in order to warrant reformation of a written contract must be clear, convincing and satisfactory. SeitzBrewing Co. v. Ayres, 60 N.J. Eq. 190.
I will therefore advise a decree dismissing the bill. *Page 4